IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

LOUIS A. PICCONE, )
)
Petitioner, )
)
v. ) 1:18-cv-00307 (LMB/IDD)
)
UNITED STATES PATENT AND )
TRADEMARK OFFICE, et al., )
)
Respondents. )

## MEMORANDUM OPINION

Louis A. Piccone ("Piccone"), acting pro se, filed this Petition[1] to review a decision of the United States Patent and Trademark Office ("PTO") suspending Piccone's license to practice before the PTO for a period of three years. Piccone asks the Court to vacate the PTO's decision as arbitrary or capricious, an abuse of discretion, or not in accordance with law. He also seeks declaratory relief as well as damages against unnamed PTO employees[2] under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). The Petition has been fully briefed and is now ripe for decision, and the Court finds that oral argument would not aid the decisional process. For the reasons that follow, the Petition will be dismissed.

---

[1] Piccone has actually filed two petitions. The first, filed on March 12, 2018 [Dkt. No. 1], was only three pages long and was accompanied by a letter of transmission [Dkt. No. 1-1] stating that the filing was a "preliminary version" to be followed by a more complete petition. The second, filed two days later [Dkt. No. 2], was styled as a "Combined Petition . . . and Complaint," and altogether—including the petition itself and its nine attachments, which contain additional briefing and which Piccone asserts are "incorporated into [the] Petition as though set out in full"—spanned over 200 pages. Consistent with the parties' briefing, the second petition will be treated as the operative one in this action.

[2] Piccone's initial petition named as respondents Andrei Iancu, in his capacity as Under Secretary of Commerce for Intellectual Property and Director of the PTO; William Covey; and ten unnamed individuals. His second petition identified only the PTO and ten unnamed individuals now identified as PTO employees.

# I. BACKGROUND

Piccone is an attorney who in 1989 was admitted to practice in Pennsylvania. A4821.[3] As relevant here, on three occasions Piccone has been administratively suspended from the practice of law by the Supreme Court of Pennsylvania: from September 1 to October 11, 2011, for failure to comply with continuing legal education ("CLE") requirements; from October 19 to December 21, 2012, for failure to pay the annual bar membership fee; and from September 30, 2013 to August 13, 2014, again for noncompliance with CLE requirements. A3174-75.

Piccone registered to practice before the PTO in August 1997. A3171-72. On December 10, 2014, the Director of the PTO's Office of Enrollment and Discipline ("OED") issued a disciplinary complaint charging Piccone with nine counts of professional misconduct.[4] A84-108. Count I involved Piccone's alleged unauthorized practice of law before the PTO in connection with a trademark application. A87-89. Counts II through V alleged that Piccone had engaged in the unauthorized practice of law in several federal district courts across the country. A89-96.[5] Finally, Counts VI through IX alleged that Piccone had engaged in "disreputable or gross conduct," acted in a fraudulent or dishonest manner, and had neglected his clients' interests. A97-108. The OED Director's complaint requested that Piccone be suspended or excluded from practicing before the PTO. A85, A108.

---

[3] References in the form "A____" are to the administrative record [Dkt. Nos. 13-19]. Both in his Petition and in a separately filed motion [Dkt. No. 29], Piccone argued that the record was incomplete or deficient. On October 18, 2018, the Court concluded that the record did not require supplementation or alteration and denied Piccone's motion [Dkt. No. 33]; the remaining arguments about the administrative record raised in the Petition are now moot.

[4] Although the complaint was issued on behalf of the OED Director, it was signed by William Griffin, OED's Deputy Director. See A108.

[5] Count V also alleged that Piccone had knowingly made a false statement of fact to a federal district court and thereby engaged in fraudulent behavior. A94-96.

2

The Chief Administrative Law Judge of the United States Environmental Protection Agency (the "ALJ") was assigned to adjudicate the disciplinary proceeding. A1-2. In just under nine months, Piccone filed 35 motions, "including numerous motions to dismiss, motions for summary judgment, and motions to reconsider." A2. The ALJ held a two-day hearing in mid-October 2015 and heard live testimony from Piccone and a PTO staff attorney as well as deposition testimony from Piccone's business associate, two of his former clients, and an officer of the Massachusetts Board of Bar Examiners. See A3. The parties also submitted post-hearing briefs for the ALJ's consideration. A3-4.

The ALJ's 69-page Initial Decision found the following to have been established by clear and convincing evidence: First, Piccone engaged in the unauthorized practice of law before the PTO by acting as attorney of record and drafting a series of documents on behalf of Lawless America Association ("Lawless"), to be filed by Lawless's president, while Piccone was suspended from the Pennsylvania bar. A15-21. Second, in a series of lawsuits filed in federal district courts in Illinois, Iowa, Massachusetts, and New Hampshire, Piccone provided legal assistance to parties without securing authorization to proceed pro hac vice, and on several occasions while his Pennsylvania license to practice law was suspended. A21-48, A57-60. Third, Piccone engaged in gross misconduct and neglected his client in an action filed in the Southern District of New York. A48-53. The ALJ rejected several other charges included in the OED Director's complaint as unsupported by sufficient evidence. A48, A53, A56-57. Having found that Piccone had violated several of the PTO's disciplinary rules,[6] the ALJ ordered that Piccone be suspended from practicing before the PTO for three years. A68 (citation omitted).

---

[6] The ALJ found that Piccone had violated 37 C.F.R. § 11.505, which prohibits lawyers from practicing law in any jurisdiction "in violation of the regulation of the legal professional in that jurisdiction"; 37 C.F.R. § 10.23(a), (b)(4), and (b)(5), which respectively prohibit attorneys from

Piccone appealed that decision to the PTO Director, arguing that the ALJ had committed 53 errors of fact, procedure, and law. A5991-6029. The Director affirmed the ALJ's decision in a 34-page Final Order. A6114-6147.[7] Piccone's subsequent motion for reconsideration, A6150-72, A6198-211, was denied by the PTO on February 9, 2018. A6213-28. Piccone timely filed the present Petition to review the PTO Director's final decision [Dkt. Nos. 1-2].

II. ANALYSIS

Congress delegated to the PTO the authority to promulgate rules "govern[ing] the recognition and conduct of agents, attorneys, and other persons representing applicants or other parties before [it]." 35 U.S.C. § 2(b)(2)(D). This delegation gives the PTO "broad authority" to set procedural and ethical rules for those who practice before it, and Congress's grant of gap-filling authority necessitates that courts defer to the PTO's choices where reasonable and not contrary to law. Lacavera v. Dudas, 441 F.3d 1380, 1383 (Fed. Cir. 2006) (citing Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 842-43 (1984)). Congress also authorized the Director of the PTO, "after notice and opportunity for a hearing," to "suspend or exclude . . . from further practice before the [PTO] . . . any person, agent, or attorney shown to be

---

engaging in "disreputable or gross conduct," "conduct involving dishonesty, fraud, deceit, or misrepresentation," and "conduct that is prejudicial to the administration of justice"; 37 C.F.R. § 10.77(b) and (c), which forbid attorneys to "[h]andle a legal matter without [adequate] preparation" or to "[n]eglect a legal matter entrusted to" them; and 37 C.F.R. § 10.84(a), which requires practitioners to "seek the lawful objectives of a client through reasonably available means permitted by law and the Disciplinary Rules." Sections 10.23, 10.77, and 10.84 were removed and reserved as part of the PTO's 2013 switch from the Code of Professional Responsibility to the Rules of Professional Conduct. Changes to Representation of Others Before the United States Patent and Trademark Office, 78 Fed. Reg. 20,180, 20,197 (Apr. 3, 2013).

[7] The Final Order was prepared and signed by the General Counsel of the PTO, who had been delegated the authority to act on the PTO Director's behalf. A6115, A6146. For ease of reference, the Court will refer to this decision as that of the PTO Director.

incompetent or disreputable, or guilty of gross misconduct, or who does not comply with the regulations established under section 2(b)(2)(D)." 35 U.S.C. § 32.

This court has exclusive jurisdiction to review decisions by the Director to suspend or exclude an attorney from practice before the PTO. 35 U.S.C. § 32; see Franchi v. Manbeck, 972 F.2d 1283, 1287-88 (Fed. Cir. 1992). Review under § 32 is governed by the judicial review provisions of the Administrative Procedure Act ("APA"). Chaganti v. Lee, 187 F. Supp. 3d 682, 690 (E.D. Va. 2016) (citing Bender v. Dudas, 490 F.3d 1361, 1365 (Fed. Cir. 2007)). Accordingly, the court's review is "highly deferential, with a presumption in favor of finding the agency action valid." Id. (quoting Ohio Valley Envtl. Coal. v. Aracoma Coal Co., 556 F.3d 177, 192 (4th Cir. 2009)). The PTO's decision will be disturbed only if the petitioner demonstrates that "it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" Bender, 490 F.3d at 1365-66 (quoting 5 U.S.C. § 706).

### A. The PTO's Findings of Professional Misconduct

First among the Petition's core arguments is that the ALJ and the PTO Director erred, under the facts and the law, in concluding that Piccone engaged in professional misconduct. None of the reasons Piccone provides is persuasive. For example, Piccone argues that it was improper for the PTO to find that he had engaged in the unauthorized practice of law with respect to work he did in support of Lawless's trademark application in late 2013 to mid-2014, while his bar license was suspended. See Combined Pet. and Compl. [Dkt. No. 2] ("Pet.") 3; id. Ex. C [Dkt. No. 2-6] 26. In support, Piccone cites a PTO regulation stating that "[a]ny individual may appear in a trademark matter for . . . [a] corporation or association of which he or she is an officer and which he or she is authorized to represent." 37 C.F.R. § 11.14(e). Piccone argues that because he was the sole "director" of Lawless at the time, see A3278, he was an officer of the

5

corporation and thus entitled to "appear" on its behalf. Pet. Ex. C [Dkt. No. 2-6] 26-35. Piccone misconstrues the regulation.[8] Section 11.14 provides in pertinent part:

> (a) Attorneys. Any individual who is an attorney as defined in § 11.1[9] may represent others before the Office in trademark and other non-patent matters. . . .
>
> (b) Non-lawyers. Individuals who are not attorneys are not recognized to <u>practice</u> before the Office in trademark and other non-patent matters, except that individuals not attorneys who were recognized to practice before the Office in trademark matters under this chapter prior to January 1, 1957, will be recognized as agents to continue practice before the Office in trademark matters
>
> (c) Foreigners. Any foreign attorney or agent not a resident of the United States . . . may be recognized for the limited purpose of representing parties located in such country before the Office in the presentation and prosecution of trademark matters . . . .
>
> . . . .
>
> (e) No individual other than those specified in paragraphs (a), (b), and (c) of this section will be permitted to <u>practice</u> before the Office in trademark matters on behalf of a client. Any individual may <u>appear</u> in a trademark or other non-patent matter in his or her own behalf. Any individual may <u>appear</u> in a trademark matter for . . . [a] corporation or association of which he or she is an officer and which he or she is authorized to represent, if such firm, partnership, corporation, or association is a party to a trademark proceeding pending before the Office.

37 C.F.R. § 11.14(a)-(e) (emphasis added). Although section 11.14 permits an individual who is not an active member of a bar in good standing to make limited appearances on behalf of a corporation of which she is an officer, that does not obviate the regulation's central prohibition against nonlawyers <u>practicing</u> on behalf of others before the PTO. As another PTO regulation makes clear, "practice" means "law-related service that comprehends any matter connected with

---

[8] The Court finds that the regulation clearly and unambiguously supports the PTO's position; however, even were that not the case, the PTO's interpretation is in no sense "plainly erroneous or inconsistent with the regulation" and would thus be entitled to deference. <u>Auer v. Robbins</u>, 519 U.S. 452, 461 (1997) (citation omitted).

[9] "Attorney or lawyer means an individual who is an active member in good standing of the bar of the highest court of any State." 37 U.S.C. § 11.1.

6

the presentation to the Office or any of its officers or employees relating to a client's rights, privileges, duties, or responsibilities under the laws or regulations administered by the Office." Id. § 11.5(b); see A6138. Here, Piccone listed himself as the attorney of record on Lawless's trademark application, A3182, and never corrected that listing despite being suspended from practice by the Supreme Court of Pennsylvania. Moreover, during the period his license was suspended, Piccone drafted (among other documents) a substantive Response to a USPTO Office Action, which Lawless's president then signed and submitted to the PTO. See A6137-38. There was nothing arbitrary or capricious about the PTO's conclusion that under those circumstances, Piccone had engaged in the unauthorized practice of law.[10]

Piccone also challenges the PTO's findings that he engaged in professional misconduct in representing clients in federal courts in Illinois, Iowa, Massachusetts, and New Hampshire. He first argues that conduct in other judicial forums is beyond the scope of the PTO's disciplinary procedures, highlighting a 1985 regulation stating that "only that conduct which is relevant to the practice of patent, trademark, or other law before the PTO is what the PTO seeks to regulate." Pet. 4 (quoting Practice Before the Patent and Trademark Office, 50 Fed. Reg. 5158, 5161 (Feb. 6, 1985)). As respondents point out, that statement was intended only to clarify that PTO regulations would not preempt state bar rules, and PTO regulations expressly contemplate the possibility that misconduct before other tribunals may result in disciplinary proceedings before

---

[10] Piccone also argues that because he prepared the Response in Canada, he was beyond the territorial reach of the PTO's disciplinary procedures. Pet. Ex. C [Dkt. No. 2-6] 35-46. Piccone repeats this argument with respect to other charges of misconduct. The extraterritoriality principle on which Piccone relies, see, e.g., Morrison v. Nat'l Austl. Bank Ltd., 561 U.S. 247, 255 (2010), has no application here because the relevant conduct is not the physical drafting of legal documents but rather the submission of those documents as part of ongoing administrative or judicial proceedings taking place in this country. Otherwise, an attorney could always escape disciplinary proceedings in a state where that attorney was practicing simply by claiming that the objectionable filings were drafted in and electronically submitted from outside the state.

7

the PTO, see 37 C.F.R. § 11.24. Congress expressly allowed the PTO Director to suspend or exclude practitioners based not only on violations of the PTO's own rules but also on any "gross misconduct" or behavior indicating the attorney is "incompetent or disreputable," 35 U.S.C. § 32, which logically includes conduct in federal district court proceedings.

Consequently, Piccone is left to quibble with the ALJ's and PTO Director's findings of fact. He argues, for instance, that the many instances in which he did legal work on behalf of clients in jurisdictions where he was not licensed to practice law were permissible because he "reasonably expect[ed] to be admitted pro hac vice."[11] Pet. Ex. D [Dkt. No. 2-7] 1. This argument flies in the face of the record, which demonstrates that Piccone made no attempt to move for pro hac vice admission in cases in Illinois, Iowa, and Massachusetts. See, e.g., A2589-93, A3340-55, A3417-19, A3483-87, A3811-13. Piccone even failed to file a motion for admission after being explicitly instructed to do so by a federal district court. See A3345, A5690. Piccone's argument also flatly contradicts his testimony at the hearing that at least in Massachusetts, he could not find local counsel to sponsor his motions for admission pro hac vice and accordingly made a conscious decision to label the pleadings he was drafting as "pro se" but "prepared with the aid of Louis A. Piccone, Esquire." A5698. Nor can Piccone effectively undermine the finding that he provided legal assistance to a plaintiff in an action filed in the Central District of Illinois even after his bar license was suspended in September 2013. See A21-24, A5690. Likewise, in response to the PTO's finding that he had neglected his client in a case before the Southern District of New York by entirely failing to comply with court orders and

---

[11] The Petition requests declaratory relief to the effect that state rules of professional conduct "do[] not require that an out of state attorney . . . engage local counsel prior to signing a retainer agreement with, or aiding in the preparation of a complaint for, a client in which the out of state attorney will need to apply for admission pro hac vice." Pet. 21. The Court lacks power to issue an advisory opinion on sovereign states' rules of ethical or professional conduct.

deadlines in late 2007 and early 2008, A48-53, Piccone argues that he was incarcerated at the time and thus should have been considered exempt from professional duties to his client and immune from any discipline stemming from that time period. Pet. Ex. H [Dkt. No. 2-11]. But nearly all of the missed deadlines and failures to comply took place from October 2007 to early January 2008, which was before the time when Piccone claims he was charged with an offense and well before when he was incarcerated. See A3768-72.

There is no need to detail every one of the PTO's findings. Having reviewed the parties' submissions and the record, the Court concludes that the PTO's findings of fact and conclusions with respect to Piccone's professional misconduct were reasonable and well supported. Nor did the PTO Director commit an abuse of discretion by affirming the ALJ's initial decision to suspend Piccone from practicing before the PTO for three years. A6139-44. For years, in multiple cases and across several states, and despite clear admonishments from many federal courts,[12] Piccone continually pushed ethical and legal boundaries in an effort to evade the rules prohibiting the unlicensed practice of law. The PTO Director carefully reviewed Piccone's conduct under the factors set out in 37 C.F.R. § 11.54(b), and the resulting three-year suspension is more than fitting.

---

[12] See, e.g., Doe v. Briggs, 945 F. Supp. 2d 210, 212 (D. Mass. 2013) (discussing Piccone's "disturbing attempts in prior litigation to involve himself in a quasi-attorney role" and stating that "[i]t is long past time for Piccone to stop what smacks of an unauthorized practice of law"); Katz v. McVeigh, No. 10-cv-410, 2012 WL 1379647, at *1-4 (D.N.H. Apr. 20, 2012) (denying Piccone's motion for admission pro hac vice based on Piccone's prior conduct, including a "pattern of behavior that has resulted in the wasting of judicial resources," a "persistent failure to explain or justify his demonstrated inability to comply with court orders and deadlines," and the "unauthorized practice of law"); Pease v. Burns, 679 F. Supp. 2d 161, 164-69 (D. Mass. 2010) (denying Piccone's motion for admission pro hac vice based on Piccone's "evasion and unreasonable behavior" and frequent "unauthorized practice of law").

## B. Piccone's Remaining Arguments

Perhaps anticipating the conclusion that the PTO's findings and decision are neither arbitrary or capricious nor an abuse of discretion, Piccone unleashes a barrage of legal theories for why the disciplinary proceeding was improper or unlawful. None has merit.[13]

Several of Piccone's arguments fail because they flout clearly established law. For example, his argument that the entire disciplinary proceeding was ultra vires because there was no written delegation of authority from the OED Director to the Deputy Director, see Pet. Ex. A [Dkt. No. 2-3], ignores the longstanding principle that delegation is "presumptively permissible absent affirmative evidence of a contrary congressional intent" or a violation of an agency's own regulation, see U.S. Telecom Ass'n v. FCC, 359 F.3d 554, 565 (D.C. Cir. 2004)—neither of which is present here. Similarly misguided is his argument that the statutory framework governing PTO disciplinary proceedings requires that "the Federal Rules of Civil Procedure" relating to discovery "shall apply to contested cases," 35 U.S.C. § 24. Section 24 "only empowers a district court to issue subpoenas for use in a proceeding before the PTO if the PTO's regulations authorize parties to take depositions for use in that proceeding"; it does not incorporate the Federal Rules wholesale or entitle Piccone to "discovery beyond that permitted by [PTO] discovery rules and rules of admissibility." Abbott Labs. v. Cordis Corp., 710 F.3d 1318, 1325, 1328 (Fed. Cir. 2013) (alteration in original) (citation omitted). Finally, Piccone's

---

[13] Piccone's arguments are styled as APA challenges or as freestanding requests for declaratory relief. Given the conclusion that none of Piccone's arguments is meritorious, the Court need not address the issue disputed by the parties of whether 35 U.S.C. § 32 is the exclusive avenue for claims challenging the PTO's disciplinary proceedings or the procedures used therein. Similarly, Piccone candidly admits that his Bivens claim is merely a stopgap to ensure that "the constitutional issues raised [in his Petition are] heard in some context," Pet. 17; this district has refused to imply a right of action to cover PTO disciplinary actions under Bivens, see Haley v. Under Secretary of Commerce for Intellectual Property, 129 F. Supp. 3d 377, 382-83 (E.D. Va. 2015), and the Court will not do so here.

attempt to fault the PTO for failing to disclose exculpatory evidence under Brady v. Maryland, 373 U.S. 83 (1963)— leaving aside Piccone's inability to identify any such evidence actually withheld, see Pet. Ex. B [Dkt. No. 2-5] 19-27—falls flat in light of clear precedent that Brady applies in civil proceedings only "where the potential consequences equal or exceed those of most criminal convictions," Fox ex rel. Fox v. Elk Run Coal Co., 739 F.3d 131, 138-39 (4th Cir. 2014) (internal quotation marks and citation omitted), which do not include PTO disciplinary proceedings, Polidi v. Lee, No. 1:15-cv-01030, 2015 WL 13674860, at *2 (E.D. Va. Nov. 24, 2015), aff'd sub nom. Polidi v. Matal, 709 F. App'x 1016 (Fed. Cir. 2017).

Several of Piccone's other arguments fail to demonstrate any basis on which the Court could conclude that the PTO acted arbitrarily or capriciously or abused its discretion. Piccone's assertion that he was "denied an independent hearing officer," Pet. 4 (capitalization altered), amounts to little more than disagreement with a number of the ALJ's procedural rulings.[14] The record reveals that although the ALJ enforced the PTO's procedures, she allowed Piccone to take some discovery and oversaw the proceedings in a reasonable and nonarbitrary manner. Similarly, Piccone argues that because the ALJ concluded there was no clear and convincing evidence of misconduct with respect to Count 8, involving a civil action that was dismissed without prejudice by the District Court for the District of New Hampshire, A53-57, she necessarily erred in concluding that there was misconduct as to Count 9, which involved a new action filed in the same court, A57-60. That is simply not the case. As respondents point out, Piccone's conduct in

---

[14] For instance, Piccone objects that the ALJ erred by requiring him to comply with the PTO's regulations on employee testimony in agency proceedings. See Pet. Ex. B [Dkt. No. 2-5] 33-35. That argument ignores the fact that "[t]he Supreme Court has approved such regulations, holding that agencies may legitimately promulgate regulations governing employee testimony and may, pursuant to those regulations, forbid an employee to testify in a court proceeding." United States v. Soriano-Jarquin, 492 F.3d 495, 504 (4th Cir. 2007) (citing United States ex rel. Touhy v. Ragen, 340 U.S. 462 (1951)).

11

the two litigations was not identical, and indeed, that he was advised of the need to secure pro hac vice admission in the first litigation makes his decision not to do so in the second all the more egregious. Further, although Piccone argues that the PTO "failed to provide [him] with a warning or other opportunity to bring his conduct into complianace [sic] with law," Pet. 6, he fails to identify any statute or regulation requiring such an opportunity to correct.

Next, Piccone's argument that the disciplinary proceeding was contrary to law for failure to comply with the applicable statute of limitations also fails. PTO disciplinary proceedings must be initiated by the earlier of (i) "10 years after the date on which the misconduct forming the basis for the proceeding occurred" or (ii) "1 year after the date on which the misconduct forming the basis for the proceeding is made known to an officer or employee of the Office." 53 U.S.C. § 32. Likewise, the OED Director's complaint must "be filed within one year after the date on which the OED Director receives a grievance forming the basis of the complaint." 37 U.S.C. § 11.34(d). The record discloses that the OED learned of Piccone's misconduct on December 11, 2013, when a staff attorney spoke with a Massachusetts Board of Bar Examiners official who informed her that Piccone had been administratively suspended by the Supreme Court of Pennsylvania. See A5113-18. The OED filed its disciplinary complaint against Piccone on December 10, 2014, within the one-year limitations period. Piccone responds that the PTO should be deemed to have been on constructive notice before December 2013 because facts relating to his misconduct had been published in several federal judicial opinions or because officials of the Pennsylvania state bar should have notified the PTO about earlier suspensions. Pet. Ex. E [Dkt. No. 2-8] 5-14; Pet. 17-18. Yet Piccone's theories of constructive notice contradict the plain terms of the governing statute and regulation, which respectively provide that the one-year limitations period runs from the date the misconduct "is made known to an officer

12

or employee" or "the date on which the OED Director <u>receives</u> a grievance." 35 U.S.C. § 32 (emphasis added); 37 U.S.C. § 11.34(d) (emphasis added).[15] Piccone tries to salvage his statute of limitations argument by objecting to discovery rulings he claims prevented him from potentially learning something that might have contradicted the PTO's evidence that it learned about his misconduct in December 2013. Pet. Ex. E [Dkt. No. 2-8] 9-13. Invoking a statute of limitations is an affirmative defense, <u>Hill v. Braxton</u>, 277 F.3d 701, 705 (4th Cir. 2002), and Piccone bore the burden of proving that defense "by clear and convincing evidence," 37 C.F.R. § 11.49. The Court finds nothing arbitrary or capricious in the PTO's conclusion that Piccone failed to do so.

Finally, many of Piccone's arguments are utterly unsubstantiated. He submits, for example, that the PTO was "prosecuting this case against [him] for political reasons" and "as retaliation for his work petitioning the government for changes in laws in the child welfare area." Pet. 3, 14. He argues, without further explanation, that the PTO's definition of the practice of trademark law is "overbroad, illegal, unconstitutional and unenforceable." <u>Id.</u> at 18. And he alleges that "[a]gency supervisors failed to enforce agency regulations against their subordinates to maximize the opportunity for agency attorneys to prevail during agency proceedings, and to cover up agency misconduct." <u>Id.</u> at 7. These arguments are without any foundation in the record and provide no basis for the Court to conclude that the PTO's decision should be disturbed.[16]

Respondents have thoroughly and capably addressed the dozens of arguments Piccone included in his over-200-page Petition. Having reviewed the briefs and administrative record, the

---

[15] Again, the PTO's reasonable interpretations of ambiguous language in the statute it administers and the regulation it promulgated are entitled to deference under <u>Chevron</u> and <u>Auer</u>, respectively.

[16] Piccone also makes passing reference to selective enforcement and Freedom of Information Act issues but has not stated standalone claims on those theories.

Court has little difficulty concluding that the PTO's findings, conclusions, and disposition in Piccone's disciplinary proceeding were not arbitrary, capricious, an abuse of discretion, or otherwise contrary to law.

III. CONCLUSION

For the reasons stated above, the Petition will be dismissed by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 13th day of November, 2018.

Alexandria, Virginia

/s/ 
Leonie M. Brinkema
United States District Judge